Exhibit B

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA


RICHARD A. HADSELL,

                         Plaintiff,

vs.                                    Case No.: 12-CV-0235-L-RBB

MANDARICH LAW GROUP, LLP, AND
CACH, LLC,

                         Defendants.
~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~




Deposition of RYAN VOS

September 26, 2012

San Diego, California




Reported by: Angie Schultz-Messenger, CSR No. 11742

1           IN THE UNITED STATES DISTRICT COURT

2         FOR THE SOUTHERN DISTRICT OF CALIFORNIA

3

4   RICHARD A. HADSELL,

5

6                     Plaintiff,

6   vs.                          Case No.: 12-CV-0235-L-RBB

7

7   MANDARICH LAW GROUP, LLP, AND

8   CACH, LLC,

9                     Defendants.
    ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

10

11

12

13

14

15           Deposition of RYAN VOS, taken on behalf of

16   Plaintiff, commencing on Wednesday, September 26,

17   2012, at 1:15 p.m., taking place at 701 B Street,

18   Suite 1115, San Diego, California , before

19   Angie Schultz-Messenger, Certified Shorthand Reporter,

20   certificate number 11742.

21

22

23

24

25

Ryan Vos                                    Hadsell v. Mandarich Law Group, LLC

```
 1                    APPEARANCES OF COUNSEL

 2    FOR PLAINTIFF:

 3            HYDE & SWIGART
              BY: JOSHUA B. SWIGART, ESQ.
 4            411 Camino Del Rio South
              Suite 301
 5            San Diego, California 92108
              (619)233-7770
 6

 7    FOR DEFENDANTS:

 8            MESSER & STILP, LTD.
              BY: NICOLE STRICKLER, ESQ.
 9            166 West Washington
              Suite 300
10            Chicago, Illinois 60602
              (312)334-3442
11

12    FOR PLAINTIFF:

13            KAZEROUNI LAW GROUP, APC
              BY: ABBAS KAZEROUNIAN, ESQ.
14            2700 North Main Street
              Suite 1000
15            Santa Ana, California 92705
              (800)400-6808

16

17

18

19

20

21

22

23

24

25
```

Page 3

Ryan Vos                                    Hadsell v. Mandarich Law Group, LLC

1   statement or the last statement that was produced.   I

2   think it goes through January 2011.

3             MS. STRICKLER:  Is that a question?

4             MR. SWIGART:  No.  He's still looking.  I

5   still have to phrase the question.

6             THE WITNESS:  78.

7   BY MR. SWIGART:

8      Q.    78.

9      A.    80 and 81, I think they're all the same.

10     Q.    Got it.  So 78.

11     A.    I believe this is the charge-off statement.

12     Q.    Okay.  And what -- what makes you believe

13  that this is the charge-off statement?

14     A.    Like you mentioned, it looks like the final

15  statement that was submitted and also matches the

16  balance upon which we sued.

17     Q.    I understand it may match the balance on

18  which you sued.  Obviously we can reconcile the

19  number.  What makes you believe it was the final

20  statement.

21     A.    Last one in the sequence that we have.

22     Q.    It's the last one that your office had in

23  its possession?

24     A.    Uh-huh.

25     Q.    That's correct?

Ryan Vos                              Hadsell v. Mandarich Law Group, LLC

1       A.    That's correct.

2       Q.    Okay.  Did anyone in your office or yourself

3    go back and make a request by CACH or anyone else --

4             MS. STRICKLER:  Objection.

5             MR. SWIGART:  Hold on.  Let me finish the

6    question.

7             MS. STRICKLER:  If you're talking about a

8    request -- but you can continue your question.

9             MR. SWIGART:  Appreciate it.  You don't even

10   know what you're objecting to yet.

11            MS. STRICKLER:  You asked did anyone make a

12   request between CACH and MLB, and any communication is

13   going to be privileged, so I can catch it in advance.

14            MR. SWIGART:  What if it's not by an

15   attorney?  I said "anybody."

16            MS. STRICKLER:  It's going to be covered,

17   but go ahead.

18            MR. SWIGART:  Really?

19            MS. STRICKLER:  Do you want to just continue

20   the deposition, or do you want to get in an argument?

21            MR. SWIGART:  It just doesn't make any

22   sense.  You don't know what my question is.  If I said

23   one of their collectors called FIA or CACH, that's

24   privileged?

25            MS. STRICKLER:  They're members of a law

1    firm.   Okay?   They're employees of a law firm.

2    There's different regulations.

3           MR. SWIGART:   Okay.   Let me finish my

4    question, so we can have a clear record and clear

5    objection.

6           MS. STRICKLER:   Go ahead.

7    BY MR. SWIGART:

8        Q.   Do you have any knowledge if there was any

9    request by anybody at Mandarich of the original

10   creditor to verify that this was the last statement?

11          MS. STRICKLER:   I guess you can answer if

12   you have any -- you can answer yes or no.

13          THE WITNESS:   I don't have any personal

14   knowledge.

15   BY MR. SWIGART:

16       Q.   Okay.   Does your office keep any records

17   that would -- you could go back and review to see if

18   that took place?

19       A.   It's possible.   I can't confirm or deny

20   whether they have a record of it or they don't have a

21   record of it.   But I could look, you know.   I don't

22   know if it exists.

23       Q.   Is that something that regularly takes place

24   on these files, if someone from your office would

25   communicate with the original creditor to get

1   documents?

2   　　　A.   We don't communicate with the original

3   creditors.   Mandarich Law Group doesn't communicate

4   with the original creditor.

5   　　　Q.   In any case you've worked on?

6   　　　A.   No.

7   　　　Q.   Okay.   Okay.   So just so we're clear, 78

8   through 80, that's the last statement that your office

9   has with regard to the account that's subject to the

10   state court complaint?

11   　　　A.   It appears to be that, yes.   There's a lot

12   of statements in here, but it appears to be that.

13   　　　Q.   I know before the deposition your attorney

14   and I were talking off the record where there's some

15   additional documents that either you or CACH had

16   received just recently.   Are any of those documents --

17   let me ask you this question first:   Have you reviewed

18   those documents?

19   　　　A.   The one we talked about is the only one I

20   looked at.   So I don't know when -- there's a lot of

21   documents on this file.

22   　　　Q.   Right.

23   　　　A.   I didn't look at the dates and when they

24   were ordered, I didn't look at the dates when they

25   were received.   This particular one stood out because

Ryan Vos                                    Hadsell v. Mandarich Law Group, LLC

1    of what we talked about, so I opened it up and looked

2    at it.  And I noticed it was a later -- it was a

3    document that was received recently.

4        Q.   Okay.

5        A.   If that makes sense.

6        Q.   That document, was it a statement?

7        A.   It was a pay stub.  It's two copies of two

8    checks written by Mr. Hadsell.

9        Q.   Okay.  So payment on the account?

10       A.   Yes.  With a signature, yes.

11       Q.   Okay.  Gotcha.  Perfect.  So going back to

12   what would be available for you to review before the

13   filing of the complaint.  Talking about the bill of

14   sale, the charge-off statement, correct?

15       A.   This particular complaint?

16       Q.   Yes, sir.

17       A.   So that was what was available at the time,

18   yes.

19       Q.   Okay.  What about, like, a terms and

20   conditions sheet, did you ever see that in

21   relationship to this file?

22       A.   Uh-huh.  To this file or just in general?

23       Q.   No.  I don't want to talk about generally.

24   We'd be here forever.  I want to talk about this file,

25   and we can be done.  This file specifically, a terms

1   and conditions sheet.

2       A.   I don't recall.  I don't recall either when

3   I was looking at the one for this particular file or

4   not.

5       Q.   Okay.

6       A.   I don't know if we've even submitted one.

7       Q.   When you say you haven't submitted one --

8       A.   Did we produce one in evidence?  I don't

9   believe we have.

10      Q.   Let me represent to you that there is not

11  one in Exhibit 2.  I think Mr. West testified to that.

12  I'm just asking you to close the loop, are you aware

13  of a terms and conditions sheet that --

14      A.   I'm personally not, no.  But I'm not the

15  person litigating this file.

16      Q.   Okay.  Fair enough.  All right.  Okay.  Any

17  other documents that you or your office would have

18  reviewed before the filing of the state court

19  complaint that we haven't covered?

20      A.   Again, anything that was available at the

21  time.  So I couldn't be specific.  I mean, sometimes

22  we have a lot of documents right way, sometimes we get

23  documents later.  It depends.

24      Q.   Okay.  So as you sit here today, you can't

25  recall exactly what was reviewed or what wasn't

Ryan Vos                                  Hadsell v. Mandarich Law Group, LLC

1    reviewed before the filing of the state court

2    complaint?

3         A.   I know that the bill of sale, one of these

4    statements, this charge-off was reviewed.

5         Q.   The documents 78, 79 and 80?

6         A.   Yes.

7         Q.   And the loan schedule?

8         A.   And the loan schedule.  I'm not sure if the

9    loan schedule was reviewed.

10        Q.   Okay.  You're the attorney who signed the

11   complaint?

12        A.   Yes.

13        Q.   Okay.  So you don't recall if that was

14   reviewed?

15        A.   No.  It was about a year ago.

16        Q.   Okay.  I'm sure you guys have a lot of

17   cases.

18        A.   Even regardless, it was a year ago, so I

19   don't remember.

20        Q.   Fair enough.  Okay.  Enough of that.  Let's

21   just talk about the system in general.  I'm talking a

22   little bit generally about accounts coming from CACH

23   to your law office, and then it's going to drill down

24   into the specifics of this case.

25        When you get accounts from CACH, what's the

Page 24

Ryan Vos                                    Hadsell v. Mandarich Law Group, LLC

1   process you go through?  And let me ask you

2   specifically to short circuit it, do you send

3   collection letters to the debtor?

4       A.   Yes.

5       Q.   Okay.  And is there like a standardized

6   procedure that you go through as far as a series of

7   letters that get sent out?

8       A.   Can you clarify what you mean by "series of

9   letters"?

10      Q.   Yeah.  And I don't know, because I haven't

11  taken your guys' deposition before.  If we can walk

12  through as far as a standard file, if you were to get

13  it from CACH -- let's talk about Mr. Hadsell.  You get

14  the account from CACH.  Is there a standard first

15  letter that goes out?

16      A.   Yeah.  So for this particular file there was

17  a standard letter that would have went out.

18      Q.   Okay.

19      A.   I think it was -- it was a letter that went

20  out in November when we received the file, FDCPA

21  letter.  Standard Dunning was what we all call it.

22      Q.   November 2011?

23      A.   Yes.

24      Q.   Okay.  Like the first letter?

25      A.   The first letter, that would be the first

Ryan Vos                                  Hadsell v. Mandarich Law Group, LLC

1    letter.

2         Q.   And your review of the file, that letter was

3    sent out?

4         A.   Say that again.

5         Q.   Your review of the file is that letter was

6    sent out?

7         A.   Yes.

8         Q.   And any response from Mr. Hadsell?

9         A.   No.

10        Q.   Okay.  After that letter was sent out in

11   this case, did you send a second letter?

12        A.   We did.

13        Q.   Okay.  Do you know about when that was?

14        A.   In, I want to say, the first or second week

15   of December, so there was at least a lapse of 30 days

16   before the second letter went out.

17        Q.   Gotcha.

18        A.   It was notice of intent to sue.

19        Q.   Okay.  And your review the file, did you get

20   any response from Mr. Hadsell?

21        A.   No, we did not.

22        Q.   Okay.  Was there a third letter that was

23   sent out?

24        A.   No.

25        Q.   Okay.  Then just the lawsuit?

1        A.    Yes.

2        Q.    Okay.  How about any written correspondence

3    received by Mr. Hadsell, did your office receive any?

4        A.    They did not.

5        Q.    Okay.  Let's just talk a little bit about

6    the procedures that your office has in place when it

7    receives correspondence.  Would it be accurate in

8    saying the letters that get sent out such as the

9    letter that -- or both letters that were sent to

10   Mr. Hadsell, is there a correspondence return address

11   that's on the letter?

12       A.    Yes.

13       Q.    Okay.  And in your experience as an attorney

14   at Mandarich, have you ever received correspondence

15   back from the consumer in response to the letters?

16       A.    Are you asking for this file particularly?

17       Q.    I'm talking about generally, because I think

18   you testified that you got no letter in this case.

19       A.    That's correct.

20       Q.    Okay.  So just generally has that ever

21   happened?

22       A.    Yes.

23       Q.    Okay.  Is there some type of procedure set

24   up on how you receive those letters?

25       A.    I mean, what do you mean by how do we

1    receive them?

2        Q.    For instance, the mail comes into my office,

3    there's a certain procedure, it goes through certain

4    people, and the mail gets distributed, and those

5    letters or pleadings, they get put in files so there's

6    a record.

7        I'm trying to get -- I know you have a lot of

8    cases in your office.  If you receive correspondence

9    back from the consumer, from the borrower, how is that

10   written correspondence handled, if at all?

11       A.    Okay.  You're specifically talking about

12   something from the consumer as opposed to return mail?

13       Q.    Yes, sir, from the consumer, a written

14   response, not just a return mail.

15       A.    We absolutely have procedures set in place

16   for that.

17       Q.    Okay.  What would that be?

18       A.    The mail comes in, we have one designated

19   person that goes through it for the day.  They go

20   through it, they put it into the file, so whichever

21   file it is.  And whatever -- depending on what type of

22   mail it is, they give it to the department that's

23   responsible for handling that type of mail.

24       Q.    Okay.  And is it tracked in the file

25   somewhere?

Ryan Vos                                    Hadsell v. Mandarich Law Group, LLC

1                        REPORTER'S CERTIFICATION

2

3          I, Angie Messenger, a certified shorthand

4     reporter, in and for the State of California,

5     Certificate No. 11742, do hereby certify:

6

7          That the foregoing proceedings were reported

8     by me stenographically and later transcribed into

9     typewriting under my direction; that the foregoing is

10    a true record of the proceedings taken at that time.

11

12         IN WITNESS WHEREOF, I have subscribed my

13    name this 8TH day of October, 2012.

14

15

16

17                                _____

18                                Angie Messenger, CSR No. 11742

19

20

21

22

23

24

25