1
2
3
4
5
6
7
8
9

10                     UNITED STATES DISTRICT COURT

11                   SOUTHERN DISTRICT OF CALIFORNIA

12

13  RICHARD A. HADSELL,                )   Civil No. 12-cv-0235-L-RBB
                                       )
14                     Plaintiff,      )   **ORDER GRANTING IN PART**
                                       )   **AND DENYING IN PART**
15  v.                                 )   **DEFENDANTS' MOTION FOR**
                                       )   **RECONSIDERATION [DOC. 70]**
16  CACH, LLC and MANDARICH            )
    LAW GROUP, LLP,                    )
17                                     )
                       Defendants.     )
18  _____)

        On August 22, 2013, the Court denied Defendant CACH, LLC's ("CACH") and

19  Defendant MANDARICH LAW GROUP, LLP's ("Mandarich") (collectively

20  "Defendants") Motion for Summary Judgment. (*Order Den. Summ. J.* [Doc. 66].) On

21  September 12, 2013, Defendants moved for reconsideration of the aforementioned order.

22  (*Mot. Recons.* [Doc. 70].) Plaintiff Richard Hadsell ("Hadsell") opposes.

23      This Court found this motion suitable for determination on the papers submitted

24  and without oral argument. *See* Civ. L.R. 7.1(d.1). (*Order Re: Oral Arg.* [Doc. 74].)

25  For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART**

26  Defendants' Motion for Reconsideration.

27

28

                                                                        12cv235

## I.   BACKGROUND

The detailed background of this case has been set out multiple times in previous orders by this Court.  Plaintiff opened a credit account with MBNA with an initial 0% annual percentage rate on balance transfers and check cash advances through the statement closing date of February 2005.  (*JSUF* [Doc. 60] ¶¶ 1–2.)  Plaintiff's account was later changed to a "WorldPoints" MBNA account with a contractual interest rate of 8.9% and then sold to Bank of America.  (*Id.* ¶¶ 3, 7.)  After May 12, 2010, Plaintiff did not make another payment on the account.  (*Id.* ¶ 6.)  On February 9, 2011, Plaintiff's account owing $5,606.24 was sold, transferred and sent to CACH with the full authority to perform all acts necessary for collection, settlement, adjustment, compromise or satisfactions of the claim.  (*Id.* ¶ 7.)  In November 2011, CACH contacted Mandarich to assist in collecting the debt Plaintiff owed ("the debt").  (*Id.* ¶ 9.)

On December 29, 2011, Defendants commenced an action to collect the debt in the San Diego Superior Court alleging a cause of action for breach of contract and a common count for account stated ("State Action").  (*JSUF* ¶ 11.)  The state-court complaint included a request for 10% interest in the prayer for relief.  (*Id.* ¶ 12.)

On January 30, 2012, Plaintiff filed an action against Defendants in this Court for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA").  (*Compl.* [Doc. 1]; *Am. Compl.* [Doc. 23] 1-2.)  Plaintiff alleged multiple violations of the FDCPA; however, at this point, only two allegations remain.  (*See generally Am. Compl.; Order to Dismiss Claim* [Doc. 58].)  First, he claims that Defendants violated 15 U.S.C. § 1692c(c) through illegal contact activity.  (*Am. Compl.* ¶¶ 24-25.)  Plaintiff alleges that Defendants improperly contacted him after they received the cease and desist letter from Plaintiff.  (*Id.*)  Second, he claims that Defendants violated 15 U.S.C. §1692f(1) by requesting 10% interest in the prayer for relief in the State Action.  (*Id.* ¶¶ 21-23.)  Plaintiff alleges that because the interest rate on the underlying debt was only 8.9%, the inclusion of 10% constituted unfair or unconscionable collection practices.  (*Id.*)

12cv235

1    On March 12, 2013, both parties moved for summary judgment.  (*Defs.' Mot.*

2    *Summ. J.* [Doc. 45]; *Pl.'s Mot. Summ. J.* [Doc. 46].)  On August 22, 2013, this Court

3    denied both motions.  (*Order Den. Summ. J.*)

4    On September 12, 2013, Defendants filed the instant Motion for Reconsideration

5    of the Court's August 22, 2013 Order.  (*Mot. Recons*.)  Defendants argue that

6    reconsideration is proper because the Court's decision to deny Defendants' Motion for

7    Summary Judgment was "clear error."  (*Id.* 2.)  Defendants argue that the August 22,

8    2013 order failed to address two of Defendants' arguments for summary judgment.  (*Id.*

9    2.)  Plaintiff opposes, arguing that this Court has ruled on all of the necessary issues, that

10   the Court need not address each particular argument made by Defendant, and that there

11   are disputes of material fact concerning the two open issues Defendants contend were

12   not addressed.  (*Opp'n* [Doc. 72].)

13

14   **II.    LEGAL STANDARD**

15   "Federal Rule of Civil Procedure 54(b) states that a district court can modify an

16   interlocutory order 'at any time' before entry of a final judgment, and [the Ninth Circuit

17   has] long recognized 'the well-established rule that a district judge always has power to

18   modify or to overturn an interlocutory order or decision while it remains interlocutory."

19   *Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1124 (quoting *Tanner*

20   *Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963)).  Although a district

21   court may reconsider its decision for any reason it deems sufficient, generally a motion

22   for reconsideration "is appropriate if the district court: (1) is presented with newly

23   discovered evidence; (2) committed clear error or the initial decision was manifestly

24   unjust; or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J,*

25   *Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir.1993); *see also*

26   *Hydranautics v. FilmTec Corp.*, 306 F. Supp. 2d 958, 968 (S.D. Cal. 2003) (Whelan, J.).

27   Clear error occurs when "the reviewing court on the entire record is left with the

28   definite and firm conviction that a mistake has been committed." *Smith v. Clark County*

12cv235

1  *School Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) (quoting *United States v. U.S. Gypsum*
2  *Co.*, 333 U.S. 364, 395 (1948)).  However, a motion for reconsideration may *not* be used
3  to raise arguments or present evidence for the first time when they could reasonably have
4  been raised earlier in the litigation.   *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d
5  877, 890 (9th Cir. 2000).  It does not give parties a "second bite at the apple." *See id.*
6  Moreover, "after thoughts" or "shifting of ground" do not constitute an appropriate basis
7  for reconsideration.  *Ausmus v. Lexington Ins. Co.*, No. 08-CV-2342-L, 2009 WL
8  2058549, at *2 (S.D. Cal. July 15, 2009).  Whether to grant a motion for reconsideration
9  is in the sound discretion of the district court.  *Navajo Nation v. Norris*, 331 F.3d 1041,
10  1046 (9th Cir. 2003) (citing *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 883
11  (9th Cir. 2000)).

12

13  **III.   DISCUSSION**

14         Defendants argue that reconsideration is appropriate under the clear error standard
15  because the Court's August 22, 2013 Order did not address Defendants' arguments that:
16  (1) Plaintiff failed to present sufficient evidence to support a violation of § 1692c(c)
17  concerning illegal contact activity; and (2) a request made in the prayer for relief is not
18  an affirmative statement of the interest rate on the original debt, and therefore, does not
19  constitute unfair or unconscionable conduct in violation of § 1692e[1] or § 1692f.  (*Defs.'
20  P.'s & A.'s* [Doc. 70-1] 1.)  Plaintiff generally opposes reconsideration on the grounds
21  that the Court already addressed all relevant issues in its August 22, 2013 Order, and any
22  remaining issues are within the Court's discretion to leave unaddressed.  (*Opp'n* 2-3.)
23  Plaintiff specifically opposes on the following grounds: (1) Plaintiff has presented
24  adequate evidence to raise a dispute of material fact concerning the illegal contact
25  activity under § 1692c(c); and (2) Plaintiff has raised, and the Court has addressed,

26  _____

27         [1]The Court notes that Plaintiff has not specifically alleged violations of 15 U.S.C. §
    1692e; however, as this is closely related to the violations alleged under 15 U.S.C. § 1692f, the
28  Court will consider Defendants' arguments under this statute as well.

12cv235

disputes of material fact concerning the propriety of Defendants requesting 10% interest in the prayer for relief, when the interest rate on the underlying debt was 8.9%.  (*Opp'n* 3-7.)

### A.    Defendants' Arguments Regarding the Cease and Desist Letter Were Not Previously Addressed and Deserve Reconsideration.

Defendants argue Plaintiff has not presented any evidence that Defendants committed a violation of § 1692c(c).[2]  (*Defs.' P.'s & A.'s* 4.)  Specifically, Defendants point to Plaintiff's failure to provide evidence that (1) Defendants received the cease and desist letter, and (2) assuming, *arguendo,* that Defendants did receive the cease and desist letter, that Defendants communicated with Plaintiff subsequent to such receipt. (*Id.* 4-5.)  Defendants further argue that any claims regarding communications prior to January 30, 2011 are time barred by the one-year statute of limitations.  (*Id.*)

Under the FDCPA, "[i]f a consumer notifies a debt collector in writing . . . to cease further communication with the consumer, the debt collector shall not communicate further with the consumer . . . If such notice from the consumer is made by mail, notification shall be complete upon receipt."  15 U.S.C. § 1692c(c).  Therefore, for Plaintiff to sustain a cause of action under § 1692c(c), Plaintiff must show that (1) Defendants received the cease and desist letter and (2) communicated with Plaintiff subsequent to such receipt.  Additionally, "[a]n action to enforce any liability created by this subchapter may be brought in any appropriate United States district court . . . within one year from the date on which the violation occurs."  15 U.S.C. § 1692k(d).

---

[2]Defendants' Motion for Reconsideration incorrectly refers to this as § 1692c(b). However, Plaintiff addressed Defendants' arguments, noting that Defendants were referring to § 1692c(c).  Defendants appropriately corrected the statutory reference in their Reply to Plaintiff's Opposition.

12cv235

1.  *Plaintiff Presented Evidence to Raise a Factual Dispute as to Whether Defendants Received the Cease and Desist Letter.*

Defendants make three arguments that Plaintiff failed to meet his burden of proof with respect to the receipt of Plaintiff's alleged cease and desist letter. (*Defs.' P.'s & A.'s* 3-5.)  First, Plaintiff failed to provide any evidence that Defendants received the cease and desist letter. (*Id.* 4-5.)  Second, Plaintiff failed to provide evidence to support presumed receipt under the mailbox rule. (*Id.* 4.)  Third, assuming, *arguendo,* that the mailbox rule applied, Defendants have presented sufficient evidence to overcome the presumption of receipt under that rule. (*Id.* 4-5.)

To adequately support a cause of action for a violation of § 1692c(c), Plaintiff must provide evidence that Defendants received his cease and desist letter. *Nichols v. GC Servs., LP*, 423 Fed. Appx. 744, 745 (9th Cir. 2011) (granting summary judgment for Defendant because Plaintiff failed to establish that Defendant had received the letter Plaintiff sent via certified mail).  Plaintiff does not provide direct evidence of receipt, but instead relies on application of the mailbox rule. (*Opp'n* 4.)

"[The mailbox rule] is a tool for determining, in the face of inconclusive evidence, whether or not receipt has actually been accomplished." *Schikore v. BankAmerica Supplemental Ret. Plan*, 269 F.3d 956, 961 (9th Cir. 2001).  "The mailbox rule provides that the proper and timely mailing of a document raises a rebuttable presumption that the document has been received by the addressee in the usual time." *Id.* (citing *Hagner v. United States*, 285 U.S. 427, 430 (1932); *Rosenthal v. Walker*, 111 U.S. 185, 193 (1884); *Lewis v. United States*, 144 F.3d 1220, 1222 (9th Cir. 1998)).

Plaintiff argues that the mailbox rule applies because "inconclusive evidence is exactly what exists here; the plaintiff's testimony claiming he mailed the letter versus the defendant's testimony claiming it was never received." (*Opp'n* 4.)  Defendants argue that the mailbox rule is not applicable because "Plaintiff could not identify when this correspondence was sent [nor] the address to which the correspondence was sent." (*Defs.' P.'s & A.'s* 4.)  In response, Plaintiff states that he "swears" he mailed the letter.

12cv235

1   (*Opp'n*. 4.)  Although no reference is provided, Plaintiff appears to be referring to his

2   Declaration in support of his Response to Defendants' Motion for Summary Judgment.

3   (*Decl. Hadsell* [Doc. 55-1].)   Absent Plaintiff's Declaration, the record contains no

4   evidence to support Plaintiff's claim that he sent the cease and desist letter to Mandarich.

5   Defendants previously argued in their Reply to Plaintiff's Response to Defendants'

6   Motion for Summary Judgment that Plaintiff's declaration should be disregarded as it

7   "contradicts [Plaintiff's] prior deposition testimony."  (*Defs.' Reply. to Pl.'s Resp to*

8   *Defs.' Mot. Summ. J*. [Doc. 59] 9.)  That argument is not explicitly rehashed here;

9   however, Defendants do refer to the lack of any evidence other than "Plaintiff's own

10  self-serving testimony."  (*Defs.' Reply. to Pl.'s Resp to Defs.' Mot. Recons*. [Doc 73] 4.)

11          "The general rule in the Ninth Circuit is that a party cannot create an issue of fact

12  by an affidavit contradicting his prior deposition testimony."  *Kennedy v. Allied Mut. Ins.*

13  *Co.*, 952 F.2d 262, 266 (9th Cir. 1991) (citing *Foster v. Arcata Associates,* 772 F.2d

14  1453, 1462 (9th Cir. 1985), *cert. denied,* 475 U.S. 1048 (1986); *Radobenko v. Automated*

15  *Equipment Corp.,* 520 F.2d 540, 543-44 (9th Cir. 1975).  To allow such evidence "would

16  greatly diminish the utility of summary judgment as a procedure for screening out sham

17  issues of fact."  *Id.* (quoting *Perma Research & Development Co. v. Singer Co.,* 410 F.2d

18  572, 578 (2d Cir.1969)).  However, in consideration of what might be seen as

19  recognition of human error, the

20          rule does not automatically dispose of every case in which a contradictory
21          affidavit is introduced to explain portions of earlier deposition testimony.
            Rather, the *Radobenko* court was concerned with 'sham' testimony that
22          flatly contradicts earlier testimony in an attempt to 'create' an issue of fact
            and avoid summary judgment. Therefore, before applying the *Radobenko*
23          sanction, the district court must make a factual determination that the
24          contradiction was actually a 'sham.'

25  *Kennedy*, 952 F.2d at 266-67.

26          Plaintiff's Declaration in support of Plaintiff's Response to Defendants' Motion

27  for Summary Judgment stated that while he did not know "the precise date," he did know

28  that he sent a cease and desist letter to Mandarich "after November 2012."  *(Decl.*

12cv235

1    *Hadsell* 2.)  Defendants contend that this declaration should be disregarded as it

2    "contradicts [Plaintiff's] prior deposition testimony," which refers to sometime in 2010.

3    (*Defs.' Reply. to Pl.'s Resp to Defs.' Mot. Summ. J.* 9.)  While Defendants provide an

4    excerpt of the referenced deposition to support their claim (*Hadsell Dep. Excerpt- Ex. H*

5    *to Defs.' Mot. Summ. J.* [Doc. 45-10; Doc. 59-4].), this excerpt provides no context for

6    the Court to determine whether Plaintiff's declaration is discussing the same matter as

7    his deposition.  The deposition excerpt begins as follows:

8        Q: Okay. Do you have any idea whether it was in the last year?
         A: No.
9        Q: Do you have any idea whether if it was in the year 2011 at all?
         A: No.
10       Q: Do you believe it was in 2010?
11       A: Possibly.

12   (*Id.* 5.)

13   This excerpt provides no indication as to what "it" refers to.  While the deposition goes

14   on to discuss the "content of the communication" Plaintiff received from Defendants,

15   this is not sufficient to support an inference about the subject matter of the earlier

16   questions.  (*Id.*)  As such, the Court is unable to determine if Plaintiff's declaration

17   directly contradicted his deposition, and thus unable to conclude that the declaration is a

18   "sham."  *See Kennedy*, 952 F.2d at 266-67.  Therefore, the Court declines Defendants'

19   request to disregard Plaintiff's declaration at this time.[3]  In light of Plaintiff's

20

21   _____

22   [3]The Court notes that Plaintiff's declaration is in direct contradiction to the amended
     complaint. (*compare Decl. Hadsell with Am. Compl.*) Plaintiff states in his declaration that he
23   sent the letter "after Mandarich Law Group began collecting on this account, which began after
     November 2012"; however, the Complaint was originally filed in January 2012, claiming that
24   "through December 2011, Mandarich Law Group repeatedly telephoned Plaintiff in an attempt to
     collect the alleged debt."  (*Decl. Hadsell* 2; *Am. Compl.* 4.)  While it appears that Plaintiff meant
25   to include a date of November 2011 in his declaration, the significance of the dates and the
     apparent disagreement over the actual dates (Plaintiff claiming both November 2012 and
26   December 2011, and Defendants pointing to a date in 2010) leaves this Court unable to conclude
     that no material facts are in dispute with respect to the Defendants' receipt of the cease and
27   desist letter.
28

8

12cv235

declaration, there remain disputes of material fact with respect to whether, and when, Plaintiff mailed the cease and desist letter.

Finally, Defendants argue that even if the mailbox rule applied, they have presented sufficient evidence to overcome the presumption of receipt. (*Defs.' P.'s & A.'s* 4-5.)  In response, Plaintiff repeats his previously overruled objections that Defendants' evidence constitutes inadmissible hearsay.[4]  (*Opp'n* 3, 5.)

Nonetheless, the Court finds Defendants' evidence unpersuasive.  Defendants argue that the testimony of Mandarich's managing attorney, Ryan E. Vos, establishes that Defendants never received the cease and desist letter.  (*Defs.' P.'s & A.'s* 4-5.) Defendants claim that "Mr. Vos testified that he reviewed the system as it relates to Plaintiff and both CACH and [Mandarich] never received any request to cease and desist from Plaintiff."  (*Id.*)  However, Mr. Vos's declaration merely shows that his law firm has established practices for documenting receipt of mail, and that Mr. Vos was not aware of any correspondence from Plaintiff to CACH.  (*Vos Test.-Ex. I to Defs.' Mot. Summ. J.* [Doc. 45-11; Doc. 59-5] 5; *Magic West Test.-Ex. D to Defs.' Mot. Summ. J.* [Doc. 45-7; Doc 59-3] 5.)  Such testimony does not establish that CACH never received the letter.  It simply shows that Mr. Vos was unaware of any such receipt.  Further, it does not adequately address whether Mandarich received the letter, or whether CACH and Mandarich have the same established practices for documenting receipt of mail. Therefore, there remains a dispute of material fact regarding Defendants' receipt of the cease and desist letter.

As such, the Court **DENIES** Defendants' Motion for Reconsideration with respect

---

[4]As this Court noted in its August 22, 2013 Order: "At the summary-judgment stage, 'we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents.'  *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).  Plaintiff does not attack the admissibility of the contents of the documents, but rather merely concludes that they are hearsay.  Consequently, insofar as the Court's reliance on any of the evidence that [Defendants] present[], the Court **OVERRULES** [Plaintiff's] objections."  (*Order Den. Summ. J.* 4 n.2.)

12cv235

1  to Defendants' receipt of the cease and desist letter.

2

3          2.        *Plaintiff Has Not Presented Any Evidence of Communication*

4                     *Subsequent to Receipt of the Cease and Desist Letter.*

5          Defendants next argue that Plaintiff has not presented any evidence that

6  Defendants communicated with him subsequent to the alleged receipt of the cease and

7  desist letter. (*Defs.' P.'s & A.'s* 5.)  Plaintiff has failed to respond to this argument

8  directly, and has failed to present any evidence of subsequent communication. (*See*

9  *generally Opp'n.*)

10         To sustain a claim for violation of § 1692c(c), Plaintiff must allege and support all

11 elements of the violation, including *unauthorized* communication *subsequent* to the

12 receipt of the cease and desist letter.  15 U.S.C. § 1692c(c).

13         Section 1692c(c) states:

14     If a consumer notifies a debt collector in writing that the consumer refuses
       to pay a debt or that the consumer wishes the debt collector to cease further
15     communication with the consumer, the debt collector shall not communicate
       further with the consumer with respect to such debt, except— (1) to advise
16     the consumer that the debt collector's further efforts are being terminated;
       (2) to notify the consumer that the debt collector or creditor may invoke
17     specified remedies which are ordinarily invoked by such debt collector or
       creditor; or (3) where applicable, to notify the consumer that the debt
18     collector or creditor intends to invoke a specified remedy.

19
20 15 U.S.C. § 1692c(c).

21         Plaintiff has not presented any evidence to show subsequent communication, nor

22 has Plaintiff provided any detail as to how the alleged subsequent communication was in

23 violation of § 1692c(c). (*See generally Opp'n.*)  As such, Defendants are entitled to

24 summary judgment on this matter[5].

25         In light of the foregoing, and because the Court committed clear error in failing to

26

27          [5]The Court does not reach Defendants' argument that Plaintiff's § 1692c(c) claim is
    barred by the statute of limitations as Plaintiff has failed to substantiate the claim with any
28  evidence.

12cv235

1   address Defendants' meritorious argument in its August 22, 2013 order, the Court

2   **GRANTS** Defendants Motion for Reconsideration with respect to Plaintiff's failure to

3   support all elements of the alleged violation of 15 U.S.C. § 1692c(c).  Therefore, the

4   Court **GRANTS SUMMARY JUDGMENT** for Defendants with respect to Plaintiff's §

5   1692c(c) claims.

6

7          **B.    The Court Properly Addressed Defendants' Argument Regarding the**

8                  **Request for 10% Interest Made in the Prayer for Relief**

9          Defendants also argue that the Court did not properly address Defendants'

10  argument that "a request made in the prayer for relief is not an affirmative statement that

11  the interest is owed and thus, not actionable under § 1692(e) or (f) [sic]."  (*Defs.' P.'s &*

12  *A.'s* 6.)  While the Court did not explicitly outline its rationale, the Court did address this

13  issue and denied summary judgment.  (*Order Den. Summ. J.* 5.)  To make clear what had

14  previously been implied, the Court will outline its rationale for denying summary

15  judgment now.

16         "The FDCPA prohibits debt collectors 'from making false or misleading

17  representations and from engaging in various abusive and unfair practices.'"  *Donohue v.*

18  *Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010) (quoting *Heintz v. Jenkins*, 514

19  U.S. 291, 292 (1995)). Section 1692e prohibits a debt collector from using "any false,

20  deceptive, or misleading representation in connection with the collection of any debt."

21  15 U.S.C. § 1692e.  More specifically, § 1692e(10) prohibits "the use of any false

22  representation or deceptive means to collect or attempt to collect any debt or to obtain

23  information concerning a consumer."  15 U.S.C. § 1692e(10).  Additionally, the statute

24  provides a non-exclusive list of conduct that is considered a violation, including: "[t]he

25  false representation of . . . the character, amount, or legal status of any debt" and "[t]he

26  threat to take any action that cannot legally be taken or that is not intended to be taken."

27  15 U.S.C. § 1692e(2)(A); 15 U.S.C. § 1692e(5).

28         Section 1692f prohibits the collection or attempted collection of debt through any

11

"unfair or unconscionable means." 15 U.S.C. §§ 1692f(1).  "[T]he collection of any amount . . . unless such an amount is expressly authorized by the agreement creating the debt or permitted by law" is a violation of § 1692f(1).  *Id.*  Amounts permitted by law include *statutorily authorized* court costs and attorneys' fees, despite the fact that such costs are not part of the underlying debt.  *See Smyth v. Merchs. Credit Corp.*, 2012 U.S. Dist. LEXIS 85524, *2 (W.D. Wash. June 19, 2012); *Winn v. Unifund CCR Partners*, 2007 U.S. Dist. LEXIS 95705, *7 (D. Ariz. Feb. 13, 2007).  "Whether conduct violates §§ 1692e or 1692f requires an objective analysis that takes into account whether the least sophisticated debtor would likely be misled by a communication." *Donohue*, 592 F.3d at 1030 (internal quotation marks omitted).

Defendants appear to argue in their Motion for Reconsideration that *any* request included in a prayer for relief would be outside the scope of §§ 1692e or 1692f. (*Mot. Recons.* 6-7.)  Defendants claim even "[t]he 'least sophisticated debtor' would understand that the prayer for relief is not part of his agreement, but rather what the debtor wants to conclude is reasonable." (*Id.* 7.)  However, under this logic, a creditor could entirely subvert the limitations imposed by the FDCPA by simply inserting "requests" under the heading "Prayer for Relief."  Certainly, the legality of collection efforts does not turn on something so inconsequential as the location of a false or misleading statement within a pleading or motion.  Defendants present no authority that a claim in a prayer for relief is somehow exempt from §§ 1692e or 1692f, and the Court is not aware of any. (*See generally Defs.' P.'s & A.'s.*)

Because Defendants do not dispute that the interest rate on the original underlying debt is 8.9%, or that they requested a 10% interest rate, they must establish that they were entitled to request an amount different from the rate on the original underlying debt. (*JSUF* ¶¶ 3, 7, 12.)  Defendants argue that they were entitled to 10% interest by law pursuant to Cal. Civil Code § 3289(b) because a new contract was formed through an account stated, and that new contract had no stated interest rate. (*Defs.' P.'s & A.'s* 2-4.)  This argument is unpersuasive.

12cv235

An account stated is "a writing which exhibits the state of account between parties and the balance owing from one to the other, and when it is assented to . . . becomes a new contract." *Gardner v. Watson*, 170 Cal. 570, 574 (1915).  Cal. Civil Code § 3289(b) states, "If a contract entered into after January 1, 1986, does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after a breach."  Cal. Civil Code § 3289(b).  Therefore, in order for this statute to apply, there must be a contract with no stated interest rate that Plaintiff breached.

Defendants claim that a new contract exists as a result of the account stated; however, as noted in the August 22, 2013 Order, "Defendant . . . confuses this Court's previously issued order dismissing Plaintiff's FDCPA claim, believing it to affirmatively hold that an account stated was created and can be used as a new contract." (*Order Den. Summ. J.* 5.)  Further, assuming, *arguendo,* that a new contract was created, Defendants' argument that the new contract had no stated interest rate is unpersuasive.  Defendants merely point to the last account statement sent to Plaintiff which "no longer reflects the 8.9% interest rate." (*Defs.' Reply. to Pl.'s Resp to Defs.' Mot. Summ. J.* 7.; *Charge-Off Statement* [Doc. 50] 4.)  However, the last statement actually shows that the interest rate is 0%, which is, at best, inconclusive as to whether there was a 0% interest rate, or whether there was no interest rate stated at all.  (*Charge-Off Statement* 4.)  Therefore, it is unclear that this hypothetical new contract would even trigger Cal. Civil Code § 3289(b).  Therefore, the Court cannot conclude that Defendant was statutorily entitled to request 10% interest in its prayer for relief.

Therefore, the Court **DENIES** Defendant's Motion for Reconsideration with respect to the alleged violation of 15 U.S.C. § 1692f.

## IV.   CONCLUSION & ORDER

In light of the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Reconsideration**.**  Specifically, the Court:

(1)    **GRANTS** Defendants' Motion for Reconsideration regarding the alleged

12cv235

violation of 15 U.S.C. § 1692c(c) and therefore **GRANTS** Defendants'
Motion for Summary Judgment regarding the alleged violation of 15 U.S.C.
§ 1692c(c); and

(2)     **DENIES** Defendants' Motion for Reconsideration regarded the alleged
violation of 15 U.S.C. § 1692f.


**IT IS SO ORDERED.**


DATED: February 6, 2014



M. James Lorenz

M. James Lorenz

United States District Court Judge

14

12cv235